[NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JACK P. MCGEE,**
*Petitioner,*

v.

**DEPARTMENT OF AGRICULTURE,**
*Respondent.*

---

2013-3174

---

Petition for review of the Merit Systems Protection Board in No. AT1221100202-C-2.

---

Decided: February 26, 2014

---

JACK P. MCGEE, of Smyrna, Georgia, pro se.

LAUREN S. MOORE, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC for the respondent. With her on the brief were STUART F. DELERY, Assistant Attorney General, BRYANT G. SNEE, Acting Director, and PATRICIA M. MCCARTHY, Assistant Director.

---

Before NEWMAN, BRYSON, and MOORE, *Circuit Judges.*

PER CURIAM

## DECISION

Jack P. McGee appeals from a decision of the Merit Systems Protection Board denying his second petition for enforcement of a settlement agreement with the United States Forest Service. We affirm in part, vacate in part, and remand for further proceedings.

## BACKGROUND

Mr. McGee worked as a Qualified Review Appraiser for the United States Forest Service ("Forest Service"), an agency within the Department of Agriculture. Mr. McGee was hired at grade GS-12 but was eventually promoted to GS-13.

In November 2009, Mr. McGee filed an individual right of action ("IRA") appeal pursuant to the Whistleblower Protection Act of 1989, alleging that the Forest Service had retaliated against him for engaging in protected whistleblowing activity. On August 11, 2010, Mr. McGee and the Forest Service entered into a settlement agreement in which Mr. McGee agreed to withdraw his appeal in exchange for the Forest Service's agreement to take certain actions with respect to his employment. That settlement agreement provided, in pertinent part:

> The Agency agrees to:
>
> 1. Reassign Appellant to the Forest Service Legacy Program Realty Specialist, GS-1170, with the specific staff responsibility in the area of State & Private Forestry's Forest Legacy Program.
>
> ***
>
> c. Appellant will report to Michael Murphy, Forest Legacy Program Manager, Southern Region.

d. Mr. Murphy will prepare a position description and the position will be classified in accordance with established classification policy and procedure. Mr. Murphy will work with the classification staff to ensure that the position description properly reflects the duties and responsibilities of this position. This position will be sent for expedited classification.

e. The agency does not represent that the position will be classified at a specific grade. Appellant acknowledges that the position may be classified at the GS-12 or GS-13 grade level.

f. If the position is classified at the GS-12 level, the Agency agrees to a three-year save pay provision to include any eligible within-grade increases otherwise due to Appellant during this time period. At the end of the three year period, Appellant would revert to a GS-12, step 10.

g. The agency agrees to make efforts to reassign Appellant to this position no later than October 1, 2010. Appellant acknowledges that the timing of this reassignment is contingent on OPM's classification of this position, which is not within the Agency's control.

After the Forest Service graded Mr. McGee's new position at the GS-12 level, Mr. McGee filed his first petition for enforcement ("PFE") of the settlement agreement. In that action, Mr. McGee alleged that the Forest Service had breached paragraphs 1(d) and 1(g) by prohibiting Mr. Murphy from working with the classification specialist to develop a position description for Mr. McGee's new position and by not sending the position description to the Office of Personnel Management ("OPM") for classification. The Merit Systems Protection Board ultimately concluded that the Forest Service did not materially breach the settlement agreement and

denied the PFE. This court affirmed. *McGee v. Dep't of Agric.*, 490 F. App'x 347 (Fed. Cir. 2012).

During his initial appeal to this court, Mr. McGee raised, for the first time, a claim that the Forest Service had fraudulently induced him to sign the settlement agreement by misrepresenting OPM's role in the classification process and by falsely assuring Mr. McGee that he would be placed in a GS-13 position. We determined that Mr. McGee had waived his claim of fraudulent inducement because he had failed to raise it before the Board, even though he had a sufficient factual basis from which to assert that claim while his case was before the Board— i.e., he knew at the time he filed the first PFE that his new position had been graded at the GS-12 level without OPM's involvement. *See McGee*, 490 F. App'x at 352-53. We added that even aside from waiver, Mr. McGee's fraud claim failed on the merits because the settlement agreement made clear that his new position could be graded at either the GS-12 or the GS-13 level. *Id.* at 353.

When Mr. McGee's position was classified as a GS-12 position on October 10, 2010, the Forest Service interpreted the three-year save pay provision as providing for two years of "grade retention," followed by a period of "pay retention," as those terms are defined in 5 C.F.R. part 536. Consistent with the regulatory requirements for grade retention, the Forest Service continued to provide Mr. McGee with the salary he had previously received as a GS-13, step 3—$91,200—after his new position was classified as a GS-12. Effective July 31, 2011, Mr. McGee received an increase in his salary from $91,200 to $94,049, the GS-13, step 4, level. Two years later, however, the agency did not grant Mr. McGee another salary increase to the GS-13, step 5, level. Mr. McGee believed he was entitled to that increase because the two-year waiting period for a step increase had passed, and the three-year save pay term in the agreement had not expired. The agency, however, asserted that Mr. McGee

was not entitled to that salary increase because the two-year period of "grade retention" had expired. At that point, according to the agency, Mr. McGee was entitled only to "pay retention," as defined in 5 C.F.R. part 536, which does not provide for salary increases to which the employee would have been entitled under the employee's previous grade level.

In June 2012 Mr. Murphy, the supervisor to whom Mr. McGee was to report under the settlement agreement, was temporarily assigned to other offices within the Forest Service for 180 days. During that period, the Forest Service assigned a different supervisor to Mr. McGee.

On June 11, 2012, Mr. McGee filed his second PFE, which is at issue in the instant appeal. Mr. McGee contended that the Forest Service breached paragraph 1(c) of the settlement agreement by temporarily forcing him to report to another supervisor while Mr. Murphy was reassigned. Likewise, he asserted that the Forest service anticipatorily breached paragraph 1(f), the three-year save pay provision, by notifying him that he would not receive a salary increase to the level of a GS-13, step 5, effective on July 31, 2013. In effect Mr. McGee claimed that the agency breached the three-year save pay provision by implementing that provision with two years of "grade retention" and one year of "pay retention," as those terms are defined in 5 C.F.R. part 536. Finally, Mr. McGee reasserted his fraud claims, alleging that the Forest Service had fraudulently induced him to enter into the settlement agreement by (1) promising him that the agency would seek classification of his new position from OPM and (2) promising him a GS-13 position.

An administrative judge denied Mr. McGee's second PFE in its entirety. With respect to paragraph 1(c), the administrative judge found that "the agency complied with the terms of the agreement by initially assigning the

appellant to the supervision of Mr. Murphy." The administrative judge found that "there was nothing in the agreement that requires Mr. Murphy to retain supervision over the appellant until the appellant retires and it would be unreasonable for the appellant to have believed that the settlement agreement provided for such given that people regularly change positions throughout their careers." Likewise, the administrative judge found Mr. McGee had offered no evidence that the Forest Service's actions were undertaken with the intent to harm Mr. McGee or to breach the settlement agreement.

With respect to the three-year save pay provision, the administrative judge determined that Mr. McGee had failed to establish a breach by the Forest Service because there was "no dispute that [Mr. McGee] is currently receiving grade retention for two years and after that he will receive pay retention."

Finally, the administrative judge determined that Mr. McGee's fraud claims were precluded under the doctrine of res judicata because Mr. McGee had failed to raise those claims before the Board during his first PFE, even though he had been "fully aware of the facts underlying" those claims at that time.

The full Board denied Mr. McGee's petition for review. With respect to Mr. Murphy's supervision, the Board found that Mr. Murphy had supervised Mr. McGee for almost two years and that Mr. McGee failed to "proffer[] any evidence of bad faith." Likewise, the Board affirmed the administrative judge's holding that Mr. McGee's fraud claims were barred by res judicata because Mr. McGee had failed to bring those claims in his first PFE.

The Board found that Mr. McGee's claim regarding the three-year save pay provision was ripe for adjudication, but it denied his claim on the merits. The Board determined that the parties to the settlement agreement had used the term "save pay" without defining it, and that

"save pay" was a term of art that means "pay retention" as defined by OPM regulations in 5 C.F.R. part 536. The Board then rejected Mr. McGee's position that he was entitled to a within-grade increase after spending two years at the level of a GS-13, step 4. The Board based its ruling on the provisions in those regulations limiting the rights of employees subject to "pay retention" to receive salary increases.

## DISCUSSION

1. Mr. McGee first contends that the Forest Service breached the settlement agreement when it temporarily reassigned Mr. Murphy to other offices and expected Mr. McGee to report to a new temporary supervisor. According to Mr. McGee, that action was a breach of paragraph 1(c) of the settlement agreement, which provides that "Appellant will report to Michael Murphy, Forest Legacy Program Manager, Southern Region."

Mr. McGee's argument is not persuasive. Paragraph 1(c) provides only that Mr. McGee would report to Mr. Murphy; it does not provide that he would report to Mr. Murphy for any defined period of time. "Where a settlement agreement is silent as to the time or duration of performance, the Board has consistently held that a reasonable time under the circumstances will be presumed." *Adams v. U.S. Postal Serv.*, 72 M.S.P.R. 6, 10 (1996). However, the Board does not look only at the length of time of compliance when considering whether an agency has complied with a settlement agreement. *Parkman v. U.S. Postal Serv.*, 66 M.S.P.R. 410, 413 (1995). The Board also considers "the overall attendant circumstances, including the motives of the agency . . . and its efforts to minimize any harmful effects on [the employee]." *Id.*; *Adams*, 72 M.S.P.R. at 10.

The Board found that Mr. Murphy was Mr. McGee's supervisor for a period of almost two years before Mr. Murphy was temporarily reassigned. That period of time

is reasonable, especially in light of the fact that Mr. Murphy's reassignment was only temporary and the fact, noted by the administrative judge, that "people regularly change positions throughout their careers."

Likewise, Mr. McGee failed to prove that the Forest Service acted in bad faith with respect to paragraph 1(c) of the agreement. The Board found that the two years of specific performance "tends to show the agency's good faith." Additionally, the Board found that "there is no evidence, nor even any allegation, that the agency intends to permanently assign someone else to supervise [Mr. McGee]." The Board's determination that the Forest Service did not breach paragraph 1(c) of the settlement agreement is therefore supported by substantial evidence.

2. Mr. McGee next claims that his fraud claims are not precluded by the doctrine of res judicata because he was not aware of the Forest Service's alleged misrepresentations until after he filed his first PFE and after he had agreed to limit the issues before the Board in that action. Therefore, according to Mr. McGee, he could not have brought the fraud claims in his first action. As we noted in Mr. McGee's first appeal, however, Mr. McGee "had a fully sufficient basis to argue that the agency had improperly induced him to enter into the settlement agreement by promising to give him a GS-13 position and then breached it by offering him a GS-12 position instead." *McGee v. Dep't of Agric.*, 490 F. App'x 347, 352 (Fed. Cir. 2012).

Even assuming that the Forest Service made fraudulent misrepresentations during the settlement process regarding the classification of Mr. McGee's position, he would have known of the false nature of those representations as of the date the agency allegedly breached its promise to grade his new position at the GS-13 level. Likewise, Mr. McGee knew that OPM was not involved in the classification process by the time he filed his first

PFE, in which he alleged that the agency had breached the settlement agreement by not involving OPM in the process. The Board also found that "Mr. McGee has not identified any facts that were unknown to him at the time he filed his first petition for enforcement." The Board's conclusion that Mr. McGee's fraud claims are barred by res judicata because the claims could have been brought in his first PFE is therefore supported by substantial evidence.

3. Mr. McGee next argues that the agency breached the settlement agreement's three-year save pay provision by interpreting and implementing that provision as two years of "grade retention"—the maximum period of "grade retention" allowed by regulation—followed by a period of "pay retention," as those terms are defined in 5 C.F.R. part 536. Mr. McGee asserts not only that the Forest Service's interpretation of the save pay provision is erroneous, but that he is entitled to two years of grade retention after the expiration of the contractual three-year save pay term. As a consequence of the agency's interpretation, Mr. McGee was not granted a salary increase equivalent to that of GS-13, step 5, on July 31, 2013—the required two years after his previous increase—because by that date Mr. McGee was no longer within the two-year period of "grade retention," under which step increases corresponding to an employee's previous grade may be granted. The Forest Service contends that Mr. McGee's pay was subject to the regulations for "pay retention" as of that date, which do not provide for granting step increases corresponding to an employee's previous grade.

We reject Mr. McGee's position that he is entitled to further grade-retention benefits at the expiration of the three-year save pay term. Nothing in his agreement with the Forest Service supports such an interpretation. Instead, the agreement provides simply that "[a]t the end

of the three year period, [Mr. McGee] would revert to a GS-12, step 10."

In its final order, the Board held that the term "save pay" in the settlement agreement "is a term of art that means 'pay retention' under the regulations of the Office of Personnel Management." To support that conclusion the Board cited a number of other Board opinions that held that terms such as "back pay," "moot," and "priority consideration" are terms of art. Additionally, the Board found support for its interpretation in the settlement agreement's use of the terms "eligible" and "otherwise due" in the phrase "save pay provision to include any eligible within-grade increases otherwise due." The Board reasoned that those terms "incorporate the notion that the appellant might not be entitled to any pay increases if he does not meet applicable eligibility criteria."

We find that the Board's interpretation of the three-year save pay provision of the settlement agreement is not supported by substantial evidence. The fact that other terms have been interpreted as terms of art is irrelevant to determining what the parties to the settlement agreement in this case meant by the phrase "three-year save pay provision to include any eligible within-grade increases otherwise due." Likewise, the use of the terms "eligible" and "otherwise due" appears to reflect only that Mr. McGee would continue to be eligible for step increases that he otherwise would have received were it not for his grade reduction. The Board's position that "save pay" means "pay retention" is in fact inconsistent with how the Forest Service implemented the save pay provision, by granting two years of "grade retention" in addition to a period of "pay retention."

As evidence that the parties to the settlement agreement intended the three-year save pay provision to mean two years of "grade retention" followed by a period of "pay retention," the government points to the sworn statement

of a Forest Service Human Resources Specialist who stated that "Mr. McGee and I have previously spoken about a three year save pay provision in the . . . settlement agreement. I have explained to Mr. McGee that through a combination of grade retention and pay retention, the Agency is maintaining his salary at levels defined by those parameters." That statement, however, does not indicate that Mr. McGee was informed about the agency's interpretation of the save pay provision before he entered into the agreement. The same applies to a number of documents from 2012 in which the agency explained how it was implementing the agreement. Such post-agreement evidence is of little help in determining how the parties interpreted the save pay provision at the time they executed the settlement agreement.

The only record evidence pointed to by the government that might tend to show that Mr. McGee agreed to the government's interpretation of the save pay provision is a chart dated August 1, 2010—before the August 11, 2010, date of the settlement agreement—that shows how Mr. McGee's salary would change with time based on two years of grade retention followed by a period of pay retention that would last until the GS-12, step 10, level exceeded his retained pay. According to the government, that chart was prepared by the Forest Service and "show[s] its intent to provide Mr. McGee with two years of grade retention, and one year of pay retention." The government, however, has pointed to nothing in the record that might establish that Mr. McGee was aware of that chart before entering into the settlement agreement. Without such evidence, the chart does not tend to establish that Mr. McGee agreed to the agency's interpretation of the save pay provision.

The government also argues that "save pay" means two years of "grade retention" followed by "pay retention" because that interpretation is "required by applicable statute and regulation," specifically 5 U.S.C. §§ 5362-63

and 5 C.F.R. part 536. Neither the statute nor the regulations, however, use the term "save pay." And although 5 U.S.C. § 5363(b)(1) provides that "[a]ny employee . . . whose position has been reduced in grade is entitled" to two years of grade retention, that provision does not state that the government cannot contractually agree to grade-retention benefits for a period of three years as part of a settlement agreement. Nor do the regulations in 5 C.F.R. part 536 place such a limitation on the government. We therefore conclude that the Board's decision to uphold the Forest Service's interpretation of the three-year save pay clause as providing for two years of "grade retention" followed by a period of "pay retention," as those retention policies are described in 5 C.F.R. part 536, is not supported by substantial evidence.

We therefore vacate that portion of the Board's decision and remand for further proceedings. Although additional evidence or findings may establish that Mr. McGee agreed to the agency's interpretation of the three-year save pay provision, the record now before the court does not support an interpretation of that clause other than that Mr. McGee would receive the salary and step increases associated with his previous GS-13 position for three years, after which he would revert to the GS-12, step 10, level.

Although the Board determined that other eligibility provisions would have limited Mr. McGee's right to a salary increase effective July 31, 2013, the government has failed to point to any limitation—other than Mr. McGee's performance at an acceptable level of competence—that might have restricted his right to a salary increase effective through October 9, 2013. The government argues that the pay-retention regulations limit the increases for which Mr. McGee is eligible, but that argument assumes that the save pay provision in the agreement should be interpreted in the same manner as the "pay retention" provision in the regulation, even though

the regulation uses the term "pay retention," not "save pay," and even though nothing in the agreement makes reference to the regulatory limitations on "pay retention."

In summary, we affirm the Board's decision with respect to Mr. McGee's claims of fraud and breach of paragraph 1(c) of the settlement agreement. We vacate the portion of the Board's decision relating to the Forest Service's alleged breach of the three-year save pay provision, and we remand for further proceedings with respect to that claim.

No costs.

### AFFIRMED IN PART, VACATED IN PART, and REMANDED